23770

In the Matter of Charles E. SMITH, Respondent.

(427 S.E. (2d) 634)

Supreme Court

*Atty. Gen., T. Travis Medlock* and *Asst. Attys. Gen., James G. Bogle, Jr.,* and *J. Emory Smith, Jr.,* Columbia, *for complainant.*

*Charles E. Smith, pro se.*

Submitted Dec. 15, 1992.

Decided Dec. 21, 1992.

*Per Curiam:*

In this attorney grievance proceeding, respondent admits that he has committed ethical violations and consents to disbarment. We accept respondent's admission and disbar him. The facts surrounding the matter are as follows:

### General Financial Irregularities

Respondent admits that he has failed to maintain the identity of client funds and has commingled these funds with his own personal funds. He has failed to maintain the integrity of his law firm's trust and checking accounts, and has converted client funds from the trust account to his own personal use or to the use of others. Although he often had a negative balance in his checking account, respondent continued to write checks that he knew could not be honored because of insufficient funds.

Respondent also admits that approximately $50,000.00 to $60,000.00, representing fees and legal expenses from a client

charged with narcotics violations, was placed in his office safe. This was done with the intent to make deposits in increments under $10,000.00 in order to avoid IRS and DEA scrutiny and regulations.

### The Crowe Matter

Mr. Crowe retained respondent to represent him in a driving under the influence (DUI) matter. Respondent charged and received from Mr. Crowe a fee of $800.00. Despite court records showing that respondent was advised of the court date, respondent and his client failed to appear. Mr. Crowe was tried *in absentia*, found guilty, and fined. Respondent advised Mr. Crowe that he was unaware of the court dates. Further, he told Mr. Crowe to not pay the fine because respondent would pay it and he would appeal the matter. Mr. Crowe subsequently was arrested for his failure to appear at the trial.

When respondent was terminated by Mr. and Mrs. Crowe, respondent informed them he would need to appear in court on April 6, 1992 to be dismissed as their attorney. On April 6, he failed to appear, and the presiding judge had to instruct Mr. Crowe's new attorney to find respondent and obtain the file.

When the Board of Commissioners on Grievances and Discipline (the Board) began its inquiry in this matter, respondent failed to respond. When he finally did reply, his response contained numerous misrepresentations.

### The Hunter Matter

Respondent was retained by the Hunter family to represent their son, who had been convicted of DUI. Respondent agreed to seek an appeal bond for their son, and if he were unsuccessful in obtaining a bond, to refund his fee for this service. When respondent was unsuccessful on the appeal bond issue, he issued Mrs. Hunter a refund check. This check was not honored by respondent's bank. Several months later, respondent reimbursed Mrs. Hunter in cash.

When the Board began its investigation, respondent failed to respond to its initial inquiry.

### The Moser Matter

Ms. Cox, an employee of respondent, was involved in a dispute with Ms. Moser concerning an automobile. Respondent

agreed to pay Ms. Moser $589.00 to repair her vehicle. The check issued by respondent was not honored by his bank; thereafter, Ms. Moser instituted legal action and filed a grievance with the Board. Four months after the check was issued, respondent paid Ms. Moser in cash.

### The Finklea Matter

Pursuant to a contract, Mr. Finklea received from respondent a check for $800.00 which was subsequently dishonored and returned to Mr. Finklea. Mr. Finklea tried unsuccessfully for five months to have respondent honor the check, and he ultimately obtained a criminal warrant for respondent's arrest. Eight months after the check was issued, Mr. Finklea was paid in cash by respondent.

### The Stover Matter

Mr. Stover entered into an agreement with respondent whereby Mr. Stover would invest $5,000.00 cash with respondent and have a guaranteed return of $6,000.00 in thirty days. When Mr. Stover presented the $6,000.00 check to the bank, it was dishonored for insufficient funds. Respondent then wrote Mr. Stover a check for $8,000.00, which was also dishonored by the bank. Mr. Stover contacted the Greenville Police Department and the Board, and instituted legal action against respondent. Mr. Stover was eventually given $8,000.00 in cash by respondent.

### The Bradley Matter

Ms. Bradley received a check from her insurance company as the result of property damage caused by a drunk driver. She thereafter visited Mr. Morrah, an attorney, for advice on a claim for bodily injury. She then visited respondent. Neither attorney was hired by Ms. Bradley, although she did inform the insurance adjuster that she had discussed the claim with respondent and Mr. Morrah. As a result, the adjuster included the names of Mr. Morrah, respondent, and Ms. Bradley on the insurance check.

Respondent contacted Ms. Bradley in December 1991 and told her that her check would soon be available. Between mid-December and mid-February 1992, Ms. Bradley was told by respondent that the $6,500.00 check had not arrived, when in fact, respondent had cashed the check and converted at least

$5,500.00 of it to his personal use. Although the signatures of Mr. Morrah and Ms. Bradley on the check are forgeries, respondent denies that he forged the signatures.

Respondent failed to respond to the Board's initial letter concerning this matter. He continued to be uncooperative with the Board and made several false assertions to the Board concerning this matter.

### The Wirtjes Matter

Mr. Wirtjes retained respondent to represent him in a DUI matter in July 1991. Respondent failed to respond to notices concerning the trial scheduled for October 1991 and refused to communicate with Mr. Wirtjes.

Respondent told Mr. Wirtjes he could still drive even though Mr. Wirtjes' license had been revoked for the failure to take a breathalyzer test. Mr. Wirtjes continued to drive, and was arrested and jailed for driving under suspension (DUS). Respondent advised his client that he would take care of the DUS matter.

Mr. Wirtjes' DUI trial was rescheduled for December 2, 1991. Respondent contacted Mr. Wirtjes and informed him that Mr. Wirtjes was to select his own jury since respondent would not be able to attend.

Respondent and his secretary then informed Mr. Wirtjes that his DUI trial had been rescheduled. However, respondent "forgot" to postpone the hearing. Respondent called the Ware Shoals Police Department on December 2, and was told the DUI hearing was still set for that date.

On December 2, respondent appeared in court to represent Mr. Wirtjes on the DUI charge. He was not prepared and failed to call any witnesses other than his client. On December 3, the DUS trial was scheduled; however, respondent was not present to represent his client. Mr. Wirtjes was found guilty. Respondent's explanation to his client was that he had "forgotten about" the trial.

Mr. Wirtjes requested a partial refund from respondent. Respondent agreed to personally pay the court fines and to refund $500.00. When Mr. Wirtjes went to pick up his check, respondent refused to give it to him. Mr. Wirtjes has yet to receive a refund.

## The Boyd Matter

Respondent agreed to represent Mr. Boyd on a DUI charge. Although notified of the trial date, respondent failed to appear in court on behalf of his client.

## The Goodman Matter

Respondent was retained for a fee of $1,500.00 by Mr. Goodman's niece to represent Mr. Goodman on DUI and firearms possession charges in South Carolina and a DUI charge in West Virginia. Mr. Goodman wrote respondent a check for $1,500.00 and, when respondent insisted that he had not received the check, wired respondent another $1,500.00. Although respondent informed Mr. Goodman that he would void the check and return it to Mr. Goodman, the check was signed and negotiated by respondent on the same day that he spoke with Mr. Goodman about not receiving the check. After a verbal confrontation with Mr. Goodman two weeks later, respondent admitted that he had overcharged Mr. Goodman and indicated that he would send Mr. Goodman a refund for the extra $1,500. No refund has been made to Mr. Goodman.

Mr. Goodman asked respondent to postpone his trial on the South Carolina charges. Respondent stated that he would do so, but did not. When Mr. Goodman was contacted by the bail bondsman and asked why he did not appear for his trial as scheduled, Mr. Goodman contacted respondent who said that he would take care of everything. Respondent did nothing and a bench warrant was issued for Mr. Goodman's arrest for failing to appear in court. Although respondent indicated that he would attempt to negotiate a plea for Mr. Goodman on the firearms charge, he failed to do so and Mr. Goodman ultimately entered a *pro se* guilty plea to the charge.

In the West Virginia case, respondent did write to the court to note his representation of Mr. Goodman and to request a continuance. Mr. Goodman subsequently retained other counsel in the matter.

Respondent's response to the Board on this matter contained false and inconsistent defenses.

## The Nicholson Matter

Mr. Nicholson retained respondent to represent him as a result of an automobile accident. Thereafter, respondent advised Mr. Nicholson that the insurance company had offered to set-

tle the property damage claim for $4,500.00. Mr. Nicholson told respondent that he could not accept this settlement. Respondent failed to respond to Mr. Nicholson's subsequent telephone calls.

Thereafter, the insurance company issued a $4,500.00 check to Mr. Nicholson and respondent as a settlement of this matter. The check was negotiated by respondent after he forged Mr. Nicholson's signature. Mr. Nicholson has not received any proceeds from the check and his medical bills were not paid.

Respondent failed to provide the Board with a copy of the file in this matter despite a subpoena directing him to do so. He also submitted false statements in his response to the Board.

### The Abdin Matter

Respondent was retained by Mr. Abdin concerning an insurance settlement for damage to his automobile. The insurance agent had to go to respondent's office to retrieve a necessary document when respondent failed to return it to the agent as requested. After a $4,500.00 settlement check from the insurance company was issued, respondent forged Mr. Abdin's signature and negotiated the check. Almost three months later, respondent issued a check for $3,500.00 to Mr. Abdin. However, the check was not honored because respondent's trust account did not have sufficient funds to cover the check. Mr. Abdin was not paid his $3,500.00, despite numerous requests for payment from respondent, until eight months later. This payment was made from funds belonging to another client.

Although he stated that he would provide the Board with certain requested information in this matter, respondent did not do so. In addition, he failed to attend two scheduled interviews with the investigator assigned to the matter and did not give notice that he would be unable to attend.

### The Cobb Matter

Respondent failed to refund $250.00 to Mr. Cobb and did not show up for at least two appointments with Mr. Cobb.

### The Hickey Matter

During the course of respondent's representation of Mr. Hickey, respondent received and deposited an insurance draft for $23,000.00 into his own account. Respondent paid the

mortgage holder involved in the matter the balance due on the mortgage, $3,800.00. The agreed fee between Mr. Hickey and respondent was $1,000.00.

Mr. Hickey attempted on several occasions to pick up the balance of the proceeds from respondent, but was unable to do so due to various excuses given by respondent. Mr. Hickey has not received his money, nor has he received his file which he requested from respondent.

Further, in an earlier document submitted to this Court, respondent represented that he had a one-third contingency fee arrangement with Mr. Hickey, and submitted an employment agreement signed by Mr. Hickey. Mr. Hickey cannot read or write, with the exception of his signature. He relied upon respondent to identify all documents that he has signed. Mr. Hickey was not told that he was signing an employment agreement, but instead that it was a document to be filed with the insurance company.

### Wiles Matter

Respondent was retained to represent Mr. Wiles in a domestic action. Respondent failed to prepare for the case and failed to appear at a number of hearings. Although respondent requested that custody of the child in this matter be awarded to his client, he failed to seek child support or possession of the child's belongings.

Respondent was also retained by Mr. Wiles in another matter. For a six-month period of time, respondent neglected to do any work on this case despite inquiries from the client.

### Stone Matter

Respondent was retained to represent Ms. Stone in two automobile wreck cases and both cases were settled. Respondent wrote checks to Ms. Stone for the settlement amount, but both checks were dishonored for insufficient funds. After much effort by the client to obtain the money from respondent, she was finally paid. However, as a part of one of the settlements, respondent was supposed to have paid Ms. Stone's physician. Respondent has never paid the physician for his services.

While representing Ms. Stone in a divorce action, respondent gave confidential information to her husband which was used against her in the action.

### Failure to Comply with Subpoena Duces Tecum

Respondent has failed to comply with or respond to three subpoenas issued by the Board for documents related to the charges against him.

### Unauthorized Practice of Law

On July 24, 1992, respondent was temporarily suspended from the practice of law. Thereafter, he informed one client that he was still working on his case, and accepted attorney's fees from another client for representing him in a criminal action. Further, he failed to advise his clients that he had been temporarily suspended from the practice of law, as required by Paragraph 30 of Rule 413, SCACR.

### Vance Matter

Respondent was retained and paid $500.00 by Mr. Vance to obtain a reduction in alimony payments. Although respondent promised Mr. Vance that he would have his alimony payments stopped, respondent did nothing with the case for over ten months. After being temporarily suspended from the practice of law, respondent wrote Mr. Vance and told him to obtain other counsel or wait a few weeks until respondent's disciplinary matter was "cleared up." The client made an effort to contact respondent, but respondent did not return his call. Respondent has not yet refunded Mr. Vance his $500.00 fee.

### Wade/C&S National Bank of South Carolina Matter

Respondent issued a $4,000 check to Mr. Wade drawn on respondent's lawyer trust account. After C&S paid the check, the financial institution upon which the check was drawn dishonored the check for insufficient funds. C&S notified respondent that the check had been dishonored and made numerous demands upon him for repayment. Respondent refused to pay until after C&S had filed a Summons and Complaint against him.

### Collier Matter

Respondent was retained to represent Mr. Collier on a DUI charge. Respondent later informed Mr. Collier that his case had been dismissed. However, a year later, the client received a letter from the solicitor telling him to appear in court on the DUI charge. At that time, Mr. Collier learned that respondent

had been suspended from the practice of law. Respondent told Mr. Collier that his suspension would only be for two weeks. Respondent assured him that he would contact the solicitor's office to check on the status of the client's case, but the solicitor's office never heard from respondent.

Mr. Collier also retained respondent to represent him in a family court matter. At trial, respondent said nothing on behalf of Mr. Collier, and would not let Mr. Collier say anything on his behalf. Mr. Collier lost the case. Although Mr. Collier paid respondent $2,000.00 to appeal the case, respondent has not taken any action on the appeal.

Mr. Collier had great difficulty in reaching respondent regarding the status of these cases. Although respondent had promised to refund the attorney's fees paid to handle these matters, he has failed to do so.

### Martin Matter

Respondent was retained by Ms. Martin to represent her in a divorce action. Respondent informed Ms. Martin that he would have to run an advertisement in the newspaper because he could not locate her husband to subpoena him. Although the client paid respondent to run the advertisement, he failed to do so. Respondent did not answer or return the client's telephone calls.

Based on the foregoing, respondent has failed to keep client funds separate from his own funds; commingled client funds, personal funds and other office funds; converted client funds to his own use; failed to deliver property to the client that the client is entitled to receive; failed to notify the client properly of receiving funds in which the client has an interest; engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation; engaged in conduct involving moral turpitude; committed criminal acts that reflect adversely upon his honesty, trustworthiness and fitness as a lawyer; failed to disclose facts necessary to correct a misapprehension known by respondent in the disciplinary matter; made false statements of material fact to a third person and to the Board; improperly disclosed a confidence or secret of his client; failed to cooperate with an investigation of the Board; failed to act with reasonable diligence and promptness in representing clients; failed to keep clients reasonably informed about the status of their cases;

failed to comply with reasonable requests for information; failed to provide competent representation; engaged in conduct tending to pollute the administration of justice and bring the legal profession into disrepute; engaged in conduct demonstrating unfitness to practice law; and engaged in conduct demonstrating a lack of professional competence in the practice of law. Respondent has also engaged in the unauthorized practice of law, failed to notify clients of his temporary suspension from the practice of law, and failed to comply with the other requirements of Paragraphs 7 and 30 of Rule 413, SCACR.

It is therefore ordered that respondent shall be disbarred from the practice of law in this State.

Disbarment.

HARWELL, C.J., and CHANDLER, J., not participating.