562 S.E.2d 639

**In the Matter of M. Eugene GIBBS, Respondent.**

No. 25452.

Supreme Court of South Carolina.

Heard Jan. 14, 2002.

Decided April 22, 2002.

262

Henry B. Richardson, Jr. and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for the Office of Disciplinary Counsel.

M. Eugene Gibbs, Florence, Pro Se.

PER CURIAM.

In this attorney disciplinary matter, a full panel of the Commission on Lawyer Conduct ("Commission") recommended M. Eugene Gibbs ("Respondent") be disbarred. We agree and disbar Respondent.

## FACTUAL/PROCEDURAL BACKGROUND

Formal charges were filed against Respondent four times between February 22, 1999, and February 6, 2001. Three hearings were held to address the various charges. In response to the first three sets of formal charges, the sub-panel recommended indefinite suspension. However, after a hearing on the fourth set of charges, the sub-panel recommended disbarment and the full panel adopted that recommendation.

In response to the disciplinary action pending against him, Respondent filed an Emergency Petition for Writ challenging the findings of the Commission below and requesting that this Court find him unable to defend himself in these proceedings, and take action to stop an alleged criminal conspiracy.

### First Formal Charges

Formal charges were first brought against Respondent on February 22, 1999.

*Patricia A. McDaniel Matter:*

On August 1, 1997, Respondent requested a transcript from Patricia A. McDaniel, a circuit court reporter. On December 5, 1997, Ms. McDaniel forwarded the transcript to Respondent with a statement for her services in the amount of $482.45.

Respondent did not pay Ms. McDaniel despite several notices and phone calls from her. After complaining to Court Administration, her complaint was sent to the Commission. On April 16, 1998, the Commission sent Respondent a letter requesting a response to the complaint within fifteen days. Respondent did not reply even after the Commission sent a second letter on May 20, 1998, requesting a response and reminding Respondent that failure to respond could in and of itself constitute grounds for discipline.

On July 7, 1998, Respondent sent a check for the full amount to the Commission, not to Ms. McDaniel, with a letter asking the Commission to pay her if it determined she deserved payment. Notice of Full Investigation was sent to Respondent on July 24, 1998. The Commission returned the check to Respondent in November 1998, stating that Respondent would have to decide whether Ms. McDaniel's invoice should be paid and reminding Respondent he still had not properly responded to the Commission's inquiry.

Respondent did not respond and, on February 22, 1999, a Notice of Formal Charges was sent to Respondent. Respondent's answer was not received by the Commission until past the deadline on April 1, 1999. In that answer, Respondent stated he believed his contract with Ms. McDaniel was terminated when she did not deliver the transcript within thirty days. He stated he would pay Ms. McDaniel if the Commis-

sion determined the transcript had been delivered pursuant to the Rules of Court.

A hearing on this matter was conducted before the sub-panel of the Commission on December 23, 1999.[1] Respondent did not appear at the hearing. Based on the evidence before it, the sub-panel found Respondent committed attorney misconduct, violating Rule 1.1 (competence) and 8.4 (misconduct) by ordering a transcript, receiving it, and failing to pay for it without just cause or excuse.

### Second Formal Charges

Before the conclusion of the Patricia McDaniel Matter, on July 6, 1999, notice of a second set of formal charges was sent to Respondent.

*Mary McLeod Matter:*

These charges arose out of Respondent's representation of Mary McLeod in what began as a routine eviction proceeding against her. Ms. McLeod lived in a mobile home situated on land in Florence County owned by Sollie and Mary Floyd. Ms. McLeod had a month to month lease with the Floyds requiring her to pay them $150.00 per month. On May 5, 1997, Honda of South Carolina Manufacturing, Inc. purchased the land, and on May 30, 1997, Honda served Ms. McLeod with notice to vacate within thirty days under the terms of her lease. They offered to pay the relocation cost of Ms. McLeod's mobile home and her first month's rent in the new location, but Ms. McLeod did not vacate.

#### (1) *Solicitation of Legal Business*

The Commission charged that Respondent improperly solicited legal business from Ms. McLeod by personally telephoning her, and requesting to be her attorney in opposition to any effort to have her evicted.

---

1. The hearing on the Patricia McDaniel Matter was heard in conjunction with the hearing on the second set of formal charges against Respondent. The sub-panel's ultimate recommendation for discipline (indefinite suspension) was based on these and the second set of formal charges discussed below.

(2) *Improper Financial Assistance to Client*

The Commission charged that Respondent paid, or caused a member of his staff to pay, rent payments directly to Ms. Floyd, and/or to others on her behalf.

(3) *Frivolous Motion to Dismiss Eviction Action*

The County brought an Application for Ejectment against Ms. McLeod. In response, the Commission charged that Respondent filed a frivolous Motion to Dismiss. The Commission alleged that Respondent incorrectly claimed (1) that Ms. McLeod did not receive notice of the termination of her lease and (2) that her lease could not be terminated absent a violation of the lease.

(4) *Incompetent Representation*

The Commission charged that Respondent acted incompetently numerous times during his representation. First, the Commission claimed he acted incompetently by filing a Notice of Appeal and Petition for Bond with the Court of Appeals when applications for Bonds should be filed in the lower court. Respondent's mistake resulted in failure to timely file for an Appeal Bond and prevented his client's case from being successfully appealed.

The Commission further charged that Respondent acted incompetently by raising the applicability of certain state and federal statutes for the first time in an Amended Motion for Stay and Bond with the circuit court.

(5) *Frivolous Claims in State Suit*

Respondent brought suit against Honda, the Town of Timmonsville, Mayor Peoples, and Florence County (by amendment). The Commission charged Respondent's claim for punitive damages against the County for emotional distress was frivolous because the South Carolina Tort Claims Act does not permit claims of intentional infliction of emotional distress.

Eventually, Respondent moved for voluntary dismissal, asserting that the matter was being litigated in federal court. Judge Kittredge dismissed the suit with prejudice. The Commission alleged Respondent acted incompetently by failing to

notify Ms. McLeod he was moving for voluntary dismissal and subsequently filing a frivolous Motion for Reconsideration, alleging that Judge Kittredge had conspired with the defendants to deprive Ms. McLeod of her rights and claiming error in the eviction proceeding. Judge Kittredge denied the Motion, noting it (1) rambled and was difficult to follow, (2) claimed error in an entirely different action than the one before him, and (3) was utterly frivolous.

### (6) *Frivolous Claims and Incompetence in Federal Suit*

Respondent filed a suit in federal court against Honda, Florence County, Mayor Peoples, the Floyds, the Department of Housing and Urban Development ("HUD"), and the Secretary of the South Carolina Chamber of Commerce. The federal district court, Judge Currie, dismissed the claims against HUD and the Chamber of Commerce with prejudice and entered summary judgment for the remaining defendants. The Commission charged that Respondent acted incompetently because the suit was frivolous, and Respondent violated the local federal rules in his filings. Further, the Commission alleged Respondent acted incompetently by pursuing relief for his client under the Uniform Relocation and Real Property Acquisition Act ("URA") when it clearly did not apply to Ms. McLeod.[2] In addition, the Commission charged that Respondent's suit against Honda and many of the other defendants was barred by the doctrine of *res judicata* as the issues had been litigated already in state court. The Commission also charged that Respondent disclosed his client's mental health history in open court without her permission or knowledge. Perhaps most significantly, the Commission charged that Respondent failed to advise his client to accept offers to move her mobile home free of charge and to pay rent for her in a new location.

### (7) *Retainer Agreement*

The Commission also found fault in Respondent's retainer agreement with Ms. McLeod because it did not identify the

---

2. The URA was inapplicable to Ms. McLeod because she was not a displaced person under the statute, and Respondent failed to first exhaust administrative remedies with HUD as required under the URA.

date the cause of action arose, whether Ms. McLeod would be responsible for costs, and whether Respondent's percentage fee would come off the top, or from the net of any recovery.

(8) *Response to the Commission's Inquiry*

The Commission sent copies of Ms. McLeod's complaints to Respondent on two occasions, each time requesting a response from Respondent within ten days. Respondent did not reply to either letter. On May 10, 1998, the Commission again requested a response, reminding Respondent that failure to respond could in and of itself constitute grounds for disciplinary action. On May 28, 1998, Respondent replied to the Disciplinary Counsel by stating that because the matter was in litigation, he had referred the complaint to the presiding judge. Further, Respondent contended to the Commission that his client had not written the complaints.

On the same day, Respondent wrote U.S. Magistrate Judge Margaret Seymour, assigned to the case, stating that two complaints had been filed against him. The Commission charged that Respondent misrepresented to Judge Seymour that his client had not written the complaints and requested action beyond her jurisdiction by asking her to hold a hearing to rule on Ms. McLeod's allegations of misconduct.

(9) *False Statements Regarding Settlement Offers*

The Commission charged that Respondent told Ms. McLeod that he could negotiate a settlement with HUD for $45,000 when, in fact, no HUD attorney had told him any such offer would be forthcoming. Respondent also stated Ms. McLeod had been offered $30,000 by another defendant ($20,000 to be paid to her and $10,000 for his fee). The Commission charged no such offer was made although Respondent insists he did receive such an offer from HUD. Also, during the course of his representation, Respondent wrote a demand letter to the S.C. Department of Commerce, requesting $25,000 to replace his client's mobile home and $10,000 to replace items lost, damaged, or stolen when her home was forcibly removed from the land. The Commission charged the demand was improper because Ms. McLeod never gave Respondent any such ac-

counting of lost or damaged items. Therefore, the $10,000 demand had no basis in fact.

### Sub-panel's Findings

A hearing on the first and second formal charges against Respondent was conducted by the sub-panel of the Commission on December 23, 1999. Respondent filed an answer,[3] but was not present at the hearing. The sub-panel found Respondent had committed attorney misconduct, in violation of the *Rules of Professional Conduct,* Rule 407, SCACR, and Rule 7 of Rule 413, SCACR.

Evidence considered at the hearing consisted of the testimony of Ms. McLeod and her boyfriend and all letters, motions, and other documents referred to in the Notice of Second Formal Charges. Based on this evidence, the sub-panel found violations of numerous provisions of Rule 407, particularly Rule 1.1 (competence), throughout Respondent's representation of Ms. McLeod.[4] Generally, the sub-panel found the Formal Charges against Respondent were supported by the evidence submitted. The sub-panel noted, "a series of events, statements by Respondent, and exhibits submitted into evidence, raised serious concerns about his competence, his ability to accurately grasp the issues, and his willingness to follow the rules of the court and the law."

---

3. In response to the filing of formal charges, Respondent sent a letter, after thirty days had expired, to Ms. Hinson at the Commission in which he answered True, False, or N/A to the charges against him without further explanation. The Attorney General's office filed a Motion to Strike and requested Default Judgment be entered because Respondent's responses did not conform to the South Carolina Rules of Civil Procedure applicable in lawyer discipline cases pursuant to Rule 9 of *Rules of Lawyer Disciplinary Enforcement,* Rule 413, SCACR. Respondent opposed the motion. The Commission ordered that Respondent make more definite replies to those questions he answered "N/A" and that Respondent's False answers would be interpreted as denied unless he clarified them further. Respondent did not clarify any of his answers in response to the Commission's Order.

4. Specifically, the sub-panel cited Respondent's failure to advise his client to accept offers for relocation and rent assistance as a basis for finding violation of Rule 1.1. In general, the sub-panel noted that the frivolous motions and the overall manner in which the litigation was pursued by Respondent, viewed cumulatively, amounted to violations of Rule 1.1.

The sub-panel found Respondent had violated Rule 4.1 (truthfulness in statements to others) and Rule 8.4 (misconduct) on more than one occasion: (1) when he failed to disclose to his client the offers made to him on her behalf and (2) when he demanded the Department of Commerce pay his client $35,000 ($25,000 for damage to her mobile home when moved and $10,000 for items lost in the move) without any factual basis for such a demand from his client. Additionally, the sub-panel found Respondent had violated the statutory provisions on barratry[5] and Rule 8.4 by soliciting Ms. McLeod's business over the telephone, as he had no professional relationship with her before he initiated contact by personal telephone call.

The sub-panel also found Respondent violated Rule 3.3 (false statement of fact made to a tribunal) in a letter to U.S. Magistrate Judge Seymour by describing Ms. McLeod's complaint letters as "allegedly" written by her. Finally, the sub-panel found Respondent's retainer agreement with Ms. McLeod violated Rule 1.5 (fees).

From Rule 7 of Rule 413, *Rules for Lawyer Disciplinary Enforcement,* SCACR, the sub-panel found Respondent had violated subsections (a)(1) (violating a rule of professional conduct), (a)(3) (knowingly failing to respond to lawful demand from a disciplinary authority), and (a)(5) (conduct tending to pollute the administration of justice or to bring the courts or legal profession into disrepute or conduct demonstrating an unfitness to practice). Based on this multitude of violations, the sub-panel recommended indefinite suspension, but did not recommend that Respondent be responsible for costs. After the filing of exceptions, the full panel adopted this recommendation on February 21, 2000.

### Third Formal Charges

The third set of formal charges filed against Respondent stemmed from his representation of two clients: (1) Christopher Hollowman (on various criminal charges) and (2) Sammy and Louise Abraham (in Mrs. Abraham's personal injury action). Formal Notice of the charges was sent to Respondent on December 7, 1999, but Respondent never picked up

---

**5.** S.C.Code Ann. § 16–17–10 (Supp.2001).

the complaint and did not file an answer. The Attorney General's Office filed an Affidavit of Default on January 27, 2000. Pursuant to Rule 24 of Rule 413, SCACR, the charges were deemed admitted.

*Christopher Hollowman Matter:*

(1) *Incompetence*

Christopher Hollowman's mother hired Respondent to represent her son on several criminal charges related to an armed robbery. She paid Respondent $100 towards a $1200 fee quoted by Respondent. She never paid the balance of the fee. On September 28, 1995, Mr. Hollowman was found guilty of the charges and sentenced. Instead of filing an appeal, Respondent filed a Motion for a New Trial on October 5, 1995. More than a year later, in December 1996, Respondent wrote Mr. Hollowman that he had filed a Motion for New Trial which the court was still considering. Although Respondent failed to move to be relieved as counsel for Mr. Hollowman, Respondent filed a document with the Clerk of Court for Florence County placing the Solicitor on notice that he should not be notified if any of his clients were called to court. Respondent stated he would not notify the client because his doctor would not allow him to practice in General Sessions court.

In April of 1997, Mr. Hollowman requested that a new attorney be appointed to represent him. The Supreme Court responded by letter that Respondent was still counsel of record and a new attorney could not be appointed unless counsel of record was relieved. By the end of the Commission's investigation, Respondent had yet to file a motion to be relieved as counsel or to file an appeal on behalf of Mr. Hollowman.

(2) *Failure to Respond to Disciplinary Charges*

According to the Attorney General's Affidavit of Default, Notice of Formal Charges in this matter was sent to Respondent by certified mail. Respondent never picked up the charges from the post office and never replied to the Commission regarding this set of charges.

*Sammy and Louise Abraham Matter:*

### (1) *Failure to Communicate*

The Abrahams filed a complaint with the Commission alleging that Respondent had failed to communicate with them regarding Mr. Abraham's loss of consortium claim. Respondent settled Mrs. Abraham's personal injury claim and distributed the proceeds to her, but never acted on Mr. Abraham's loss of consortium claim the Abrahams claimed they had hired him to pursue.

### (2) *Failure to Respond to Disciplinary Charges*

Respondent was first notified of Louise Abraham's complaint on April 29, 1999. Respondent initially replied, but ignored a subpoena issued for Mrs. Abraham's file. Respondent also failed to reply to the Notice of Full Investigation, despite its warning that failure to respond could constitute independent grounds for disciplinary action. Respondent did send the Commission notice of his new address in Maryland during the course of the investigation, and all correspondence was sent to the address given. According to the Attorney General's Affidavit of Default, Notice of Formal Charges in this matter was sent to Respondent by certified mail. Respondent never picked up the charges from the post office and never replied to the Commission regarding this set of charges.

### *Sub-panel's Findings*

A hearing on the third formal charges was conducted before a sub-panel of the Commission on March 10, 2000. Respondent was present at the hearing although he never submitted an answer. At the hearing, Respondent claimed an inability to defend himself for mental health reasons. After the Commission denied Respondent's claim of inability to defend in other proceedings,[6] the sub-panel issued a report on April 25, 2000. The sub-panel found him to be in default, but allowed Respondent to present evidence in mitigation. Evidence presented to the sub-panel included Christopher Hollowman and the Abrahams' testimony and exhibits.

---

6. Respondent's claim and the proceedings initiated as a result are discussed in the next section.

As to the Christopher Hollowman matter, the sub-panel deemed the charges admitted and found Respondent to be in violation of various sections of the *Rules of Professional Conduct,* Rule 407 and Rule 413, SCACR. From Rule 413, SCACR, the sub-panel found Respondent violated Rule 7(a)(1) (violating a rule of professional conduct), Rule 7(a)(3) (refusal to respond to an inquiry of a disciplinary authority), Rule 7(a)(5) (conduct demonstrating unfitness to practice law), and Rule 7(a)(6) (violating the oath taken upon admission to practice in this State).

From Rule 407, SCACR, the sub-panel found Respondent violated Rule 1.2 (scope of representation) because he did not discuss the Motion for a New Trial sufficiently with his client; Rule 1.3 (diligence) because he failed to pursue his client's Motion for a New Trial; Rule 1.6 (terminating representation) because he did not take steps necessary to protect his client's interests prior to withdrawing from the case by pursuing the Motion for a New Trial or by filing an appeal; and Rule 3.2 (expediting litigation) because he failed to take reasonable efforts to expedite his client's Motion for a New Trial.

As to the Abraham matter, the sub-panel found Respondent did not violate any of the *Rules of Professional Conduct* in the course of his representation of the Abrahams, but did violate the rules by failing to respond or cooperate with the investigation. Specifically, the sub-panel concluded Respondent violated the *Rules of Lawyer Disciplinary Enforcement,* Rule 413, SCACR, Rules 7(a)(1) and 7(a)(3) for failing to respond to a lawful demand by a disciplinary authority. The sub-panel recommended Respondent receive indefinite suspension, to run concurrently with the sanction of indefinite suspension already recommended.

### Fourth Formal Charges

The fourth set of formal charges against Respondent stemmed from allegations that Respondent was practicing law after this Court issued an order transferring Respondent to incapacity inactive status. During the disciplinary hearing on the third formal charges, Respondent maintained he was unable to defend himself due to mental incapacity. On April 26, 2000, upon notification from Office of Disciplinary Counsel, this Court ordered Respondent be transferred to incapacity

inactive status. This Court appointed Steve Wukela, Jr., Esquire to assume responsibility for Respondent's files. This Court then remanded the matter to the Commission for a determination of the validity of Respondent's claim of inability to defend.

In response, a hearing panel of the Commission ordered initiation of Rule 28(b) proceedings, and appointed W. Haigh Porter as Attorney and Guardian *ad Litem* for Respondent. The Commission ordered Dr. Geoffrey R. McKee to examine Respondent and to report to the Commission regarding Respondent's mental status. Despite numerous attempts by Mr. Porter to contact Respondent and to notify him of his scheduled examination with Dr. McKee and Dr. Donna Schwartz Watts, Respondent never replied and did not attend the scheduled examination. Without any evidence of Respondent's mental condition, the Commission denied Respondent's claim of inability to defend and resumed the disciplinary proceedings against him. On April 26, 2001, this Court ordered Respondent to remain on incapacity inactive status until the completion of his disciplinary proceedings.

The fourth formal charges against Respondent were filed on February 6, 2001. Respondent failed to respond to these formal charges as required. Therefore, under Rule 24 of Rule 413, SCACR, the charges were deemed admitted.

## (1) *Unauthorized Practice*

Respondent is licensed to practice law only by the Supreme Court of South Carolina. As discussed, Respondent was transferred to incapacity inactive status by order of this Court on April 26, 2000. An attorney in inactive status may not practice law. Despite this, Respondent continued to practice law.

Between May 3, 2000 and August 10, 2000, Respondent sent at least six letters on law firm letterhead to the Clerk of Court for the United States Court of Appeals for the Second Circuit. The letters forwarded various motions, requests, and attorney affidavits, signed by Respondent relating to litigation pending before that court.[7] Beginning on June 9, 2000, Respondent's

---

7. Respondent represented the heirs of the South Carolina artist, William H. Johnson, in *James H. Johnson, Individually and as Personal*

letters to the Second Circuit were sent on Hardnett & Associates [8] stationery.

After he was transferred to incapacity inactive status, Respondent continued to maintain a website (*www.whjstolenart.com*) bearing his Silver Spring, Maryland and Florence, South Carolina addresses. The website displayed the letterhead of Respondent's former law firm "Gibbs & Scott," and incorrectly identified Clifford Scott, Esquire as being associated with Respondent although their association ended two years before Respondent was placed on incapacity inactive status.[9] The website chronicled the litigation in *Johnson v. Smithsonian, et. al,* characterizing the activities of the Smithsonian as fraud, and claiming the defendants were trying to force Plaintiffs to abandon the case by driving them into bankruptcy. To fund the litigation, Respondent solicited funds off the website through the sale of a William H. Johnson video for $30.00 and a set of documents for $25.00. The Commission charged such activity constituted the offense of barratry.

(2) *False, Misleading, And/Or Outrageous Statements in the Course of Litigation*

Respondent made numerous false and/or misleading statements and a multitude of outrageous allegations in motions, letters, and affidavits he submitted to the Second Circuit during the *Johnson* litigation. Respondent made false state-

---

*Representative of the Distributees of the Estate of William H. Johnson, Deceased v. The Smithsonian Institution and Michael Rosenfeld Gallery, Inc.* to recover works of Johnson's art they claimed were stolen by the Smithsonian and the Michael Rosenfeld Gallery in a criminal conspiracy. Respondent was admitted *pro hac vice* in the United States District Court in New York, but that court revoked his *pro hac vice* status on May 18, 2000, after Respondent was placed on incapacity inactive status by this Court.

**8.** After being placed on incapacity inactive status, Respondent claimed to have associated himself with this Maryland law firm although he was not licensed to practice law in Maryland and never sought *pro hac vice* admission in Maryland.

**9.** As of February 1, 2002, this website was in operation, displaying the same Gibbs & Scott letterhead and referring to M. Eugene Gibbs, Esquire as the Johnson family attorney. The website could not be located after Respondent appeared before this Court on February 7, 2002, and may have been taken down.

ments of fact, including his claim that opposing counsel, Peter Stern, offered him $30,000 and information which could "sink" the other defendant, the Smithsonian, in exchange for release of Stern's client. Mr. Stern flatly denies ever making any offer to Respondent and claims to have no such damaging information about the Smithsonian. Respondent also claimed, in a Motion for Injunction filed in the Second Circuit, that Mr. James G. Bogle, Jr., Senior Assistant Attorney General for South Carolina, had offered to drop all disciplinary charges against him in return for ten days of suspension.

Additionally, Respondent accused United States District Judge Constance Baker Motley of being involved in a criminal conspiracy with opposing counsel, accused one of the defendants of murder on more than one occasion, and claimed that the disciplinary action being taken against him in this State was all part of the criminal conspiracy to conceal the theft of the Johnson artwork by the defendants.

### (3) *Incompetent Representation*

Respondent acted incompetently by filing suit in federal district court in an attempt to set aside a decision of the New York Supreme Court. The only appropriate course of action would have been to file an appeal in the New York appellate court as the federal district court has no jurisdiction to review a decision by a state trial court. Respondent never initiated any such appeal. After the federal district court dismissed the suit, Respondent acted incompetently by continuing to file frivolous motions, unsupported by the record or the facts, that resulted in undue burden, delay, and harassment of the defendants.

### (4) *Failure to Respond to Disciplinary Charges*

Respondent received and accepted the Notice of Full Investigation in this matter by certified mail on April 5, 2000. Respondent failed to respond to the Notice as required.

### (5) *Improper Trust Account Activity*

After Respondent was placed on incapacity inactive status, Mr. Wukela, appointed to protect his clients' interests, discovered ongoing activity in an open trust account held by Respon-

dent at BB & T. After this Court's order freezing all trust accounts, Respondent wrote three checks, totaling $2,947.50, to Barbara Gibbs and a fourth check to a mastercard account for over $900.00. Two of the checks to Barbara Gibbs had the notation "for Abraham Hearing" and the third had the notation "for MD Jurisdiction." The check to mastercard contained no reference to any client file. Respondent did not reply to the Attorney General's request for more information regarding the checks.

## Sub-panel's Findings

On June 19, 2001, a third hearing was conducted by a sub-panel of the Commission to address the fourth set of formal charges against Respondent. Respondent failed to answer the charges and was not present at the hearing. The sub-panel found Respondent to be in default and, under Rule 24, the allegations were deemed to be admitted. Based on the facts alleged and deemed admitted, the sub-panel found Respondent violated Rules 7(a)(1), (3), (5), and (6) of the *Rules for Lawyer Disciplinary Enforcement*, Rule 413, SCACR. The sub-panel also found he violated Rules 1.1 (competence), 1.2 (scope of representation), 3.1 (meritorious claims and contentions), 3.3 (candor toward tribunal), 3.4 (fairness to opposing party and counsel), 4.1 (truthfulness in statements to others), 5.5 (unauthorized practice of law), 8.1(b) (failing to respond to lawful demand from disciplinary authority), and 8.4(a), (c), (d), and (e) (misconduct) of the *Rules of Professional Conduct*, Rule 407, SCACR.

The sub-panel noted much of Respondent's conduct in this case, specifically the frivolous litigation and abuse of process, mirrored the conduct for which Respondent had already, very recently been recommended for sanction. The sub-panel went on to find Respondent guilty of the unauthorized practice of law, citing his continued representation of Johnson and appearances in court after he was placed on incapacity inactive status. The sub-panel also found Respondent guilty of improper trust account activity, of failing to cooperate with the attorney appointed to protect his clients interests, and of failing to respond to disciplinary charges.

Based on these findings, the sub-panel recommended Respondent be disbarred. The full panel adopted that recommendation in September 2001.

### Emergency Petition for Writ

On December 17, 2001, Respondent filed a document with this Court entitled "Emergency Petition for Writ." In this document, Respondent takes exception with the panel's findings, arguing under his own version of the facts and ignoring that many of the allegations against him were deemed admitted because of his failure to respond. Although it is entitled "Emergency Petition for Writ," it appears to be no more than an exception to the panel's findings, as defined in Rule 27(a) of the *Rules for Lawyer Disciplinary Enforcement*, Rule 413, SCACR. Rule 27 provides: "[w]ithin 30 days of the service of the hearing panel report, disciplinary counsel and/or respondent may serve and file a brief setting forth and arguing any exceptions taken to the findings, conclusions, or recommendations made by the hearing panel." Respondent requests that this Court find him incompetent, and goes on to argue both the merits of the charges against him and the merits of the *Johnson* litigation, apparently in hopes that this Court will intervene to stop what he deems to be a "criminal conspiracy." Additionally, Respondent requests that this Court intervene in a declaratory action for a fee that Respondent claims the Bryan, Bahnmuller, Goldman, & McElveen law firm owes him.

We address his requests in reverse order. First, we decline to address the litigation between Respondent and the Bryan, Bahnmuller, Goldman, & McElveen law firm as the matter is properly pending before the circuit court. Similarly, we decline to act on Respondent's allegations of criminal conspiracy involving the *Johnson* litigation, as we have no jurisdiction to interfere with a matter pending in federal court. Second, we believe Respondent's "Petition" is subject to the procedural rules for filing exceptions provided in Rule 27, *Rules for Lawyer Disciplinary Enforcement*, Rule 413, SCACR. Under Rule 27, Respondent did not file his exceptions within the 30 days allotted. The full panel's report was certified to the Supreme Court on October 12, 2001, and Respondent's exceptions were not filed until more than two

months later. Therefore, we decline to consider Respondent's exceptions to the Commission's findings below.

Finally, we find Respondent's claim that this Court declare him incompetent for purposes of these proceedings comes too late. When he claimed he was unable to defend himself at the disciplinary hearing on the third formal charges in March 2000, the Commission properly initiated proceedings to determine capacity under Rule 28 of the *Rules for Lawyer Disciplinary Action,* Rule 413, SCACR. Haigh Porter, Esquire was appointed as attorney and guardian *ad Litem* for Respondent and a psychiatric evaluation for Respondent was scheduled with Dr. McKee and Dr. Schwartz–Watts. Respondent failed to attend the evaluation or to communicate with the attorney appointed to represent him. This Court immediately placed Respondent on incapacity inactive status pursuant to Rule 28(d) and did not reinstate him despite the Commission's finding that Respondent was capable of assisting in his defense. Under Rule 28(d)(1), such a finding by the Commission is interlocutory and may not be appealed before entry of a final order in the proceeding.

In support of his contention that he is unable to assist in his own defense, Respondent has submitted a report from the Department of Labor stating he is not capable of practicing law. This report does not address, however, whether Respondent is incapable of understanding the charges against him and thus is unable to assist in his own defense. Based on the Commission's Rule 28 finding below, and on Respondent's appearance before this Court, we find Respondent is able to assist in his own defense. Respondent gave an articulate presentation of his point of view when he appeared before this Court, illustrating a detailed knowledge of the facts and memory of the events at issue. Respondent stated he has not sought medical treatment since the death of his former psychiatrist in 1999, and he failed to attend the psychiatric evaluation scheduled by the Commission pursuant to Rule 28. We affirm the Commission's finding that Respondent is able to assist in his defense in this attorney disciplinary matter.

## LAW/ANALYSIS

This Court may make its own findings of fact and conclusions of law, and is not bound by a panel's recommenda-

tion. *In re Larkin,* 336 S.C. 366, 520 S.E.2d 804 (1999). The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court. *In re Long,* 346 S.C. 110, 551 S.E.2d 586 (2001). The sanction of disbarment has been imposed by this Court in similar cases involving multiple acts of misconduct. *See, e.g., In re Morris,* 343 S.C. 651, 541 S.E.2d 844 (accepting Agreement for Discipline by Consent to disbar for failure for failing to act with reasonable competence or diligence in representation of clients, failure to keep clients informed, failure to safeguard property of clients, and allowing non-lawyer assistant to engage in unauthorized practice of law (among other violations)); *In re Huskey,* 342 S.C. 409, 537 S.E.2d 276 (2000) (disbarring attorney for failure to act with diligence and promptness in representing clients, failure to keep clients informed, failure to maintain clients' funds separate from his own, and failure to promptly deliver funds); *In re Godbold,* 336 S.C. 568, 521 S.E.2d 160 (1999) (disbarring attorney for failing to remit settlement funds to clients, failing to remit settlement funds to clients' medical providers, failing to pay bills, and failing to file state and federal tax returns); *In re Glee,* 333 S.C. 9, 507 S.E.2d 326 (1998) (disbarring attorney for converting client funds for his own purposes, failing to provide competent representation, failing to comply with demand for payment, and failing to act with reasonable diligence); *Matter of Smith,* 310 S.C. 449, 427 S.E.2d 634 (1992) (disbarring attorney for commingling client funds with personal and office funds, committing criminal acts reflecting adversely on his fitness as a lawyer, failing to cooperate with the investigation, and engaging in unauthorized practice of law).

The gravity of Respondent's numerous incidences of misconduct, including his flagrant unauthorized practice of law, failure to provide competent representation on so many occasions, repeated failure to respond to the disciplinary charges against him, failure to cooperate with the attorney appointed to protect his clients' interests, lack of candor to the tribunal and to his own clients, and improper use of client trust account funds, more than justifies the full panel's recommendation for disbarment.

### Conclusion

For the foregoing reasons, we adopt the full panel's recommendation for disbarment and deny Respondent's Emergency Petition for Writ. Additionally, we affirm the Commission's denial of Respondent's claim of inability to defend.

**DISBARRED.**